**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CASE NO. 5:25-cv-05023-TLB |
| JAMES HUDSON, | ) ) | |
| Defendant. | ) ) | |

**COMPLAINT**

For its complaint against defendant James Hudson ("Hudson"), plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual) states:

**<u>NATURE OF THE CASE</u>**

1.      This is a declaratory judgment action for rescission of a disability income insurance policy that MassMutual issued to Hudson.

2.      In April 2024, Hudson submitted a claim for benefits under the policy.  Upon receipt and review of the claim, MassMutual discovered that Hudson made fraudulent and/or material misrepresentations regarding his medical history in the application for the policy.

3.      Hudson represented in the application that (1) in the last 10 years, he had not been diagnosed, treated, tested positive for, or been given medical advice for a disorder or impairment of the spine, neck, or back; (2) in the last 3 years, he had not had a physical exam, check-up, or evaluation regarding a condition not previously stated on the application; and (3) he was not currently under treatment for anything not previously disclosed on the application.  Hudson specifically represented that he was "never . . . diagnosed or treated for any back symptoms."

4.      Upon reviewing Hudson's claim for disability income benefits, MassMutual discovered that Hudson had a long history of chiropractic treatment for back and neck pain spanning from 2018 to 2023, before he applied for the policy.

5.      MassMutual would not have issued the policy as it was issued, or at all, had Hudson provided complete and accurate information on the application for the policy.

6.      Accordingly, MassMutual brings this action to obtain a declaratory judgment that the policy is void and rescinded and for fraud.

## PARTIES

7.      MassMutual is a mutual life insurance company organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Springfield, Massachusetts.  MassMutual is a citizen of the Commonwealth of Massachusetts.

8.      Defendant James Hudson is an individual who, upon information and belief, maintains a residence at 2506 NW Linebarger Lane, Bentonville, Arkansas 72712-3974.  Hudson is a resident and citizen of Arkansas, so this Court has personal jurisdiction over Hudson.

## JURISDICTION AND VENUE

9.      In a lawsuit to determine the validity of an insurance contract, the policy limit is the amount in controversy.  *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996); *see also Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 930 (E.D. Ark. 2008).

10.     The policy provides that Hudson may receive $3,300 per month in benefits (nearly $40,000 per year) plus cost of living adjustments, until age 67, if Hudson becomes totally disabled. Hudson is currently thirty-six years old.  The amount in controversy thus exceeds $75,000, exclusive of interest and costs.  In addition, there is complete diversity between MassMutual and Hudson because they are citizens of different states.  This Court therefore has jurisdiction over this matter under 28 U.S.C. § 1332(a).

11.     Venue for this action is properly placed in the United States District Court for the Western District of Arkansas, Fayetteville Division, under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

## STATEMENT OF FACTS
### Application and Issuance of Policy

12.     On January 23, 2023, Hudson completed Part 1 of an Application for Disability Insurance ("Part 1"). *See* Ex. A (Policy and Application) at "Part 1." On January 23, 2023, Hudson completed Part 2 of an Application for Disability Insurance ("Part 2") (Part 1 and Part 2 are referred to collectively as the "Application"). *See* Ex. A at "Client Medical Interview (CMI) Application Part 2."

13.     The Application asked, and Hudson answered, the following questions:

- In the last 10 years, have you been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for a disease or disorder noted below . . . i. A disorder or impairment of the muscles, bones, joints, nerves, spine, neck or back . . .?  [Ex. A at 74 (Question B6.i)];

- In the last 3 years, have you . . . a. Had a physical exam, check-up or evaluation by a member of the medical profession regarding a condition not previously stated in this Application?  [Ex. A at 75 (Question B9.a)]; and

- Are you currently . . . a. Under treatment by a member of the medical profession for anything not previously stated on this Application?  [Ex. A at 75 (Question B10.a)].

14.     Hudson answered "No" to questions B6.i, B9.a, and B10.a. *See* Ex. A at 74-75.

15.     Hudson affirmed that "these answers [we]re true, complete, and currently recorded to the best of my knowledge and belief."  Ex. A at 71, 77.  Further, Hudson "adopt[ed] all statements made in the Application[s] and agree[d] to be bound by them." *Id.*

16.     Hudson further acknowledged and agreed that "Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law." Ex. A at 71, 77.

3

17.     In the underwriting process, MassMutual received information regarding Hudson's possible chiropractic treatment for back pain and cervical radiculopathy in 2018.  MassMutual contacted Hudson to inquire about his possible 2018 chiropractic treatment(s).  Hudson responded that he did not recall having chiropractic treatment in 2018 for back pain and cervical radiculopathy, and further represented that he had never been treated for back pain.

18.     On February 15, 2023, Hudson signed an Amendment to Pending Application.  *See* Ex. A at "Amendment to Pending Application."  On the Amendment, Hudson stated that "I have never been diagnosed or treated for any back symptoms." Ex. A at 57.  The Amendment became part of the Application.  *Id.* (Hudson "agree[d] this amendment shall be incorporated in the application referenced above as fully and completely as if amendment(s) had been originally set forth therein, and will be subject in all respects to the agreements contained in the application").

19.     On the Amendment, Hudson "agree[d] that all statements and answers on this form are true and complete to the best of [his] knowledge and belief," and "[e]xcept as changed above, the answers and statements to the application for insurance to Massachusetts Mutual Life Insurance Company are true and complete to the best of [his] knowledge and belief as if made at the time [he] signed the amendment." Ex. A at 57.

20.     In reliance on Hudson's representations in the Application and the Amendment, MassMutual issued disability income insurance policy no. 63802179 (the "Policy") to Hudson. *See* Ex. A.

## Claim for Benefits

21.     On April 4, 2024, Hudson submitted a claim for benefits under the Policy.  Hudson claimed Total Disability since March 14, 2024, due to an Essential Tremor.  *See* Ex. B (Insured's Statement for Disability Benefits).

22.     In conjunction with Hudson's claim, MassMutual obtained Hudson's medical records.

23.     Hudson's medical records revealed misrepresentations in the Application and Amendment.  Specifically:

- On September 13, 2018, Hudson had an appointment with Dr. Collins at Collins Chiropractic & Diagnostics where Hudson complained of symptoms of cervical spine lordosis;

- On September 18, 2018, Hudson had a visit with Dr. Collins where Hudson reported a "click" in his neck and restricted movement in his left thumb. Dr. Collins provided Hudson with treatment for his complaints at the visit;

- On September 21, 2018, Hudson was seen by Dr. Collins for follow-up treatment;

- On October 2, 2018, Hudson was seen by Dr. Collins for follow-up treatment;

- On October 31, 2018, Hudson was seen by Dr. Collins for follow-up treatment and further reported neck and back pain, along with a sore jaw.

- On July 2, 2019, Hudson had an appointment with Dr. Collins where he reported lower back pain and neck pain;

- On November 27, 2019, Hudson had an appointment with Dr. Collins due to new right hip pain;

- On September 3, 2020, Hudson visited Dr. Collins complaining of neck pain and pain between his shoulder blades, which was worsened by sitting and looking down;

- On April 19, 2021, Hudson had a visit with Dr. Collins where he complained of lower back pain, which started due to work.  At this appointment, Dr. Collins diagnosed Hudson with low back pain;

- On August 30, 2021, Hudson visited Dr. Collins due to new complaints of tightness in his neck and back.  At this visit, Dr. Collins continued to diagnose Hudson with low back pain;

- On October 5, 2021, Hudson had an appointment with Dr. Collins where Hudson reported experiencing pain in the left side of his neck and tightness

5

in his back provoked by prolonged sitting. Dr. Collins continued to diagnose Hudson with low back pain;

- On January 5, 2022, Hudson visited Dr. Collins and reported stiffness and clicking in his neck when turning his head as well as lower back stiffness and pain in the morning with sitting to standing. Dr. Collins continued to diagnose Hudson with low back pain; and

- Less than one week prior to submitting the Application, Hudson visited Dr. Collins on January 16, 2023, complaining of stiffness in his neck especially when turning to the left and sharp radiating pain to his shoulder. Dr. Collins diagnosed Hudson with low back pain and pain in thoracic spine.

24.     Although the questions in the Application and the Amendment solicited information regarding Hudson's medical conditions, treatment, and diagnoses – specifically related to his neck, back, and spine – Hudson did not disclose any such conditions, treatment, or diagnoses on the Application or the Amendment. *See supra* ¶¶ 13-14, 17-18; *see also* Ex. A.

25.     Hudson's true and complete medical history rendered him ineligible for the Policy as it was issued. Had Hudson truthfully and accurately responded to the questions in the Application, MassMutual would not have issued the Policy as it was issued. Accordingly, Hudson's misrepresentations were material to the insured risk.

26.     Further, given the extent of Hudson's misrepresentations – which included his failure to disclose years of medical treatment that he received for neck and back pain (including seeking treatment for neck and shoulder pain less than one week before submitting his Application), Hudson intentionally misrepresented his medical history to deceive MassMutual into issuing the Policy.

### Rescission of the Policy

27.     By letter dated October 2, 2024, MassMutual advised Hudson that it was rescinding the Policy due to material and/or fraudulent misrepresentations in the Application. MassMutual

tendered to Hudson $3,211.98, which represented the total premiums paid for the Policy, plus interest.

28.     Hudson did not deposit the premium refund check that MassMutual tendered. Instead, on October 8, 2024, Hudson returned the tendered funds and disputed MassMutual's determination that the Policy was void and rescinded.

29.     In subsequent correspondence, MassMutual explained to Hudson its position and the basis for its decision and provided him with a replacement premium refund check. To date, Hudson has not deposited the premium refund check.

## COUNT I
## DECLARATORY JUDGMENT AGAINST DEFENDANT
## RESCISSION

30.     MassMutual incorporates each of the paragraphs above as if set forth herein at length.

31.     In connection with disability income insurance, such as the Policy, Arkansas law provides that an insurer may rescind a policy:

> upon receipt of information concerning the insured's state of health, and a finding thereon that the insured failed to disclose or misrepresented material information contained on the application. Material information is that information concerning the insured's physical condition or past treatment which would, if disclosed, resulted in refusal to accept that insured or others treated for the same condition or in substantially the same condition as the insured.

Code Ark. R. 054.00.52-9.

32.     A material misrepresentation in an application does not have to be related to a loss sustained to permit rescission after the loss. *Hiscox Dedicated Corp. Member Ltd. v. Taylor*, 2023 WL 5660147, at *7 (W.D. Ark. Aug. 31, 2023) (citing *S. Farm Bureau Life Ins. Co. v. Cowger*, 748 S.W.2d 332, 336 (Ark. 1988)). Nor does the misrepresentation need to be intentional to permit

rescission. *Id.* (citing *McQuay v. Ark. Blue Cross and Blue Shield*, 98 S.W.3d 454, 458 (Ark. Ct. App. 2003)).

33.    The Policy was issued less than two years ago, on February 9, 2023.

34.    In light of Hudson's failure to disclose his medical history of chiropractic treatment, exams, and diagnoses stemming back to 2018, the Application for the Policy and the Amendment contained material misrepresentations.[1]

35.    The information that Hudson failed to disclose was necessary for MassMutual's evaluation of Hudson's eligibility for the Policy and MassMutual's evaluation of the insured risk.

36.    Had MassMutual known that Hudson was receiving medical treatment for back, neck, and shoulder pain in the years (and week) before he applied for the Policy, MassMutual would not have issued the Policy as it was issued.

37.    MassMutual is therefore entitled to declaratory judgment that the Policy is void and rescinded and that the Policy never came into effect.

38.    MassMutual tendered all premiums paid by Hudson, plus interest to the date of tender, and, if necessary, will promptly file a motion to deposit the premiums in the registry of this Court.

## COUNT II
## FRAUD

39.    MassMutual incorporates each of the paragraphs above as if set forth herein at length.

40.    Hudson's failure to disclose his medical history of chiropractic treatment, exams, and diagnoses on the Application constituted false misrepresentations of fact.

---

[1] While MassMutual need not establish Hudson's intent to misrepresent his health condition to rescind the Policy under Arkansas law, Hudson's misrepresentations were knowing and intentional. *See supra.*

41.    The information that Hudson failed to disclose was necessary for MassMutual's evaluation of Hudson's eligibility for the Policy and MassMutual's evaluation of the insured risk.

42.    Had MassMutual known that Hudson was receiving medical treatment for back, neck, and shoulder pain in the years (and week) before he applied for the Policy, MassMutual would not have issued the Policy as it was issued.

43.    Hudson's false representations of fact were material to MassMutual's decision to issue the Policy.

44.    Hudson knew that his material misrepresentations were false. Hudson visited the chiropractor for treatment on January 16, 2023, less than *one week* before submitting the Application for the Policy. Yet when MassMutual inquired about this medical history, Hudson attested that he never received treatment for back pain.

45.    Hudson's medical records revealed at least thirteen instances when Hudson sought treatment for and was examined by a chiropractor for back and/or neck pain.

46.    Hudson misrepresented his medical history with the intent to induce MassMutual into issuing the Policy.

47.    MassMutual justifiably relied on Hudson's multiple representations regarding his medical history, including his representations on the Application, interview, and Amendment.

48.    MassMutual was damaged by Hudson's fraudulent misrepresentations by being induced into insuring a risk that it did not agree to insure.

49.    In addition, the Policy contains the following provision:

**Fraud**

In the event this Policy and any rider, benefit, or reinstatement are procured by fraud or a claim is made with the intent to defraud, this Policy is void. This provision shall control over all other Policy provisions.

Ex. A at 30.

50.     MassMutual is therefore entitled to declaratory judgment that the Policy is void and rescinded, and that the Policy's coverage never came into effect in addition to any other relief to which it may be entitled.

## RELIEF REQUESTED

WHEREFORE, MassMutual respectfully requests the entry of an order:

A.     Directing MassMutual to deposit the sum of $3,211.98, which constitutes a full refund of the premiums paid for the Policy, plus interest, into the registry of this Court;

B.     Declaring that the Policy was not effective, and that the Policy is void and rescinded;

C.     Declaring that MassMutual does not owe coverage for Hudson's claim for benefits under the Policy; and

D.     Awarding MassMutual such other and further relief as this Court may deem appropriate.

MassMutual demands a jury trial on all triable issues.

Dated:  February 7, 2025                          Respectfully submitted,

                                                  Gary D. Marts, Jr. (2004116)
                                                  WRIGHT, LINDSEY & JENNINGS LLP
                                                  200 West Capitol Ave., Ste. 2300
                                                  Little Rock, AR 72201
                                                  Tel.: 501-371-0808
                                                  Fax: 501-376-9442
                                                  gmarts@wlj.com

                                                  *Counsel for Plaintiff Massachusetts Mutual
                                                  Life Insurance Company*