# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,                          )
                                            )
              Plaintiff/Counter-Defendant,  )
                                            )
      v.                                    )        CASE NO. 5:25-cv-05023-TLB
                                            )
DEFENDANT JAMES HUDSON,                     )
                                            )
              Defendant/Counter-Claimant.   )


## DEFENDANT JAMES HUDSON'S ANSWER TO COMPLAINT AND COUNTERCLAIMS

Defendant, James Hudson ("Defendant"), by way of Answer to the Complaint filed by Plaintiff, Massachusetts Mutual Life Insurance Company ("Plaintiff"), and by way of Counterclaims, states as follows:

## NATURE OF THE CASE

1.     Responding to the allegations of paragraph 1, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions to which no response is required.  Defendant admits the allegation that Plaintiff issued a disability income insurance policy (the "Policy") to Defendant.

2.     Responding to the allegations of paragraph 2, Defendant admits the allegation that on April 4, 2024, Defendant submitted a claim for benefits under the Policy.  Defendant denies the allegations that Defendant made fraudulent and/or material misrepresentations regarding his medical history in the application for the policy. Defendant denies each and every remaining allegation of this paragraph.

1

3.      Responding to the allegations of paragraph 3, Defendant denies the allegations stated in subpart (1), because Plaintiff did not state question (1) from the application in its entirety and thus misrepresented the stated question and answers by the Defendant.  Regarding the allegations in question (2) stating "in the last 3 years, he had not had a physical exam, check-up, or evaluation regarding a condition not previously stated on the application," Defendant admits that he disclosed all physical exams, check-ups and evaluations to Plaintiff during the underwriting process of his application.  Regarding the allegations in question (3) stating that "he was not currently under treatment for anything not previously disclosed on the application," Defendant admits those allegations.  Defendant denies each and every remaining allegation of this paragraph.

4.      Responding to the allegations of paragraph 4, Defendant admits that he had chiropractor visits since 2018 for wellness maintenance and minor aches and pains like a strained muscle or stiffness and for a general "tune up," as part of routine maintenance of his health to prevent injuries.  Defendant denies each and every remaining allegation of this paragraph.

5.      Responding to the allegations of paragraph 5, Defendant denies each and every allegation of this paragraph.

6.      Responding to the allegations of paragraph 6, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions to which no response is required.  Defendant denies each and every allegation of this paragraph.

## PARTIES

7.      Responding to the allegations of paragraph 7, Defendant lacks knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 7 and therefore denies each and every allegation of this paragraph.

8.      Responding to the allegations of paragraph 8, Defendant admits each and every allegation of this paragraph.

## JURISDICTION AND VENUE

9.      Responding to the allegations of paragraph 9, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions to which no response is required.

10.     Responding to the allegations of paragraph 10, Defendant admits the allegation that Defendant is entitled to receive $3,300 per month in disability benefits until age 67 and that he is thirty-six years old.  Defendant admits that the amount in controversy exceeds $75,000. Defendant neither admits nor denies the remaining allegations set forth in Paragraph 10 to the extent that they call for legal conclusions to which no response is required.

11.     Responding to the allegations of paragraph 11, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions to which no response is required. Defendant admits the allegations that a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Arkansas.

## STATEMENT OF FACTS

### Application and Issuance of Policy

12.     Responding to the allegations of paragraph 12, Defendant admits the allegations that Defendant submitted an application for disability insurance to Plaintiff on or about January 23, 2023 and that he completed a Client Medical Interview (CMI) with a representative of Plaintiff.  Defendant lacks sufficient information to admit or deny the allegations related to what specific parts he personally completed on the application because Plaintiff's representatives/employees filled in information in the application after Defendant's interview.  Defendant made a request for disclosure of his claim file, but Plaintiff refused to

provide a copy of the claim file before the filing of Defendant's Answer and Counterclaims. Defendant states that the claim file contains the contractual, medical, and other information pertaining to Defendant's application and the answers therein, and is the best evidence of the allegations surrounding the parties' claims and speaks for itself. Defendant denies each and every remaining allegation of this paragraph.

13.     Responding to the allegations of paragraph 13, Defendant admits the allegations that Defendant answered several questions on an application for the Policy. Defendant denies all the remaining allegations in paragraph 13 of the Complaint because the stated questions B6.i, B9.a, and B10.a are not stated in their entirety in the Complaint and contain omissions of relevant terms. The claim file contains the contractual, medical, and other information pertaining to Defendant's answers and is the best evidence of the allegations surrounding the parties' claims and speaks for itself. Below, Defendant restates the Questions from the application in their entirety and provides his answers:

- Defendant admits that he answered "No" to Question B6.i and that the question provides the following statement: "In the last 10 years, have you been diagnosed or treated, tested positive for, or been given medical advice by a member of the medical profession for a disease or disorder noted below: A disorder or impairment of the muscles, bones, joints, nerves, spine, neck or back such as arthritis, gout, sciatica or amputations."

- Defendant admits that he answered "No" to Question B9.a. and that the question provides the following statement: "In the last 3 years, have you: Had a physical exam, check-up or evaluation by a member of the medical profession regarding a condition not previously stated on this Application?"

- Defendant admits that he answered "No" to Question B10.a. and that the question provides the following statement: "Are you currently: Under treatment by a member of the medical profession for anything not previously stated on this Application?"

14.     Responding to the allegations of paragraph 14, Defendant admits that he answered "No" to Questions B6.i, B9.a, and B10.a, as these questions are restated in their

entirety in his response to paragraph 13 of the Complaint. Defendant denies each and every remaining allegation of this paragraph.

15.     Responding to the allegations of paragraph 15, Defendant admits that he was required to sign under a boiler-plate paragraph in the application on page 72 of Exhibit "A" of the Complaint that stated: "I, the undersigned, have read the Application including all supplements and all statements and answers, and affirm that these statements and answers are true, complete, and correctly recorded to the best of my knowledge and belief." Defendant admits that on page 78 of Exhibit "A," he was required to sign under a paragraph that stated: "I hereby adopt all statements made in the Application and agree to be bound by them." Defendant denies each and every remaining allegation of this paragraph.

16.     Responding to the allegations of paragraph 16, Defendant neither admits nor denies the allegations set forth, to the extent that it is not stated how Defendant "acknowledged" and "agreed" on pages 71 and 77 of Exhibit "A." Defendant denies each and every remaining allegation of this paragraph.

17.     Responding to the allegations of paragraph 17, Defendant admits that before Plaintiff approved his application for the disability Policy, Defendant disclosed that since 2018, he had occasionally visited a chiropractor (Dr. Jason Collins) for the purposes of injury prevention, "tune-up," and maintenance of his overall health. During all his visits with Dr. Collins, Defendant was treated with chiropractic techniques and exercises, and was prescribed strengthening and stretching exercises to help him strengthen different muscle groups of his body, with the goal of minimizing the risks of any injuries that might develop during his job as a dentist. Defendant denies the allegations set forth in paragraph 17 of the Complaint that he received treatment from a chiropractor for back pain and cervical radiculopathy in 2018. Defendant denies each and every remaining allegation of this paragraph.

18.     Responding to the allegations of paragraph 18, Defendant neither admits nor denies the allegations contained in paragraph 18 of the Complaint because he did not draft himself the Amendment to Pending Application on page 58 of Exhibit "A." Defendant does not have possession of a copy of the claim file to be able to review all of his communications with Plaintiff, via either phone or email, in order to respond to the allegations.  Plaintiff refused to provide a copy of the claim file before Defendant's Answer and Counterclaims and asserted through its attorneys that it would provide it with its initial disclosures.  There is no signature by Defendant on page 58 of Exhibit "A" to the Complaint.  Defendant admits the allegations that page 58 includes a sentence that states: "I(We) agree this amendment shall be incorporated in the application referenced above as fully and completely as if amendment(s) had been originally set forth therein and will be subject in all respects to the agreements contained in the application."  Defendant denies each and every remaining allegation of this paragraph.

19.     Responding to the allegations of paragraph 19, Defendant neither admits nor denies the allegations contained in paragraph 19 of the Complaint because he did not draft himself the Amendment to Pending Application on page 58 of Exhibit "A."  Defendant does not have possession of a copy of the claim file to be able to review all his communications with Plaintiff, via either phone or email, in order to respond to the allegations.  Plaintiff refused to provide a copy of the claim file before Defendant's Answer and Counterclaims and asserted through its attorneys that it would provide it with its initial disclosures.  Defendant admits that page 58 includes a sentence that states: "I(We) agree this amendment shall be incorporated in the application referenced above as fully and completely as if amendment(s) had been originally set forth therein and will be subject in all respects to the agreements contained in the application."  Defendant denies each and every remaining allegation of this

paragraph.

20.     Responding to the allegations of paragraph 20, Defendant admits that Plaintiff issued a disability policy to Defendant.  Defendant lacks knowledge and information sufficient to form a belief as to the remaining allegations and therefore denies each and every remaining allegation of this paragraph.

**Claim for Benefits**

21.     Responding to the allegations of paragraph 21, Defendant admits the allegations set forth in paragraph 21 of the Complaint.

22.     Responding to the allegations of paragraph 22, Defendant lacks knowledge and information sufficient to form a belief as to the allegations as they relate to Defendant's actions. Defendant denies each and every remaining allegation of this paragraph.

23.     Responding to the allegations of paragraph 23, Defendant denies the allegations because the medical records do not include misrepresentations that were made in the application and amendments.  As to each bullet point of paragraph 23, Defendant specifically responds as follows:

- Defendant admits that his medical records on September 13, 2018 from Dr. Collins state the following: "The patient presents with symptoms related to loss of c/s lordosis + 12 degrees about 5 years ago."  Defendant denies the remaining allegations set forth in bullet point (1) because they do not accurately restate the medical records.

- Defendant admits that his medical records on September 18, 2018 from Dr. Collins state the following: "When looking off to either side and coming back to center, there is a "click" at center and another slightly past center. Left thumb has some restrictions."  Defendant denies the remaining allegations set forth in bullet point (2) because they do not accurately restate the medical records.

- Defendant admits that his medical records on September 21, 2018 from Dr. Collins state the following: "Patient feeling 'pretty good.'"  Exercise is at a 50%," evidencing that in only eight days since his first visit, through strengthening exercises and stretching, Defendant's overall health had improved. Defendant denies the remaining allegations set forth in bullet point (3) because they do not accurately

restate the medical records.

- Defendant admits that his medical records on October 2, 2018 from Dr. Collins state the following: "Symptoms continue to improve." Defendant denies the remaining allegations set forth in bullet point (4) because they do not accurately restate the medical records.

- Defendant admits that his medical records on October 31, 2018 from Dr. Collins state the following: "neck and back pain, jaw sore due to increased stress recently." Defendant denies the remaining allegations set forth in bullet point (5) because they do not accurately restate the medical records.

- Defendant admits that his medical records on July 2, 2019 from Dr. Collins state the following: "New problems: Lower back pain and neck pain; Onset due to: lifting injury, roller skating, jumping on trampoline claim carrying son." Defendant denies the remaining allegations set forth in bullet point (6) because they do not accurately restate the medical records.

- Defendant admits that his medical records on November 27, 2019 from Dr. Collins state the following: "New problem: Right hip; Onset due to: rock climbing." Defendant denies the remaining allegations set forth in bullet point (7) because they do not accurately restate the medical records.

- Defendant admits that his medical records on September 3, 2020 from Dr. Collins state the following: "New problems: Neck and between shoulder blades; Onset due to: work." Defendant denies the remaining allegations set forth in bullet point (8) because they do not accurately restate the medical records.

- Defendant admits that his medical records on April 19, 2021 from Dr. Collins state the following: "New problems: LB pain/sore onset 4-5 days ago; Onset due to: work." Defendant denies the remaining allegations set forth in bullet point (9) because they do not accurately restate the medical records.

- Defendant admits that his medical records on August 30, 2021 from Dr. Collins state the following: "New problems: Tightness in neck and back; Onset date: August 30, 2021." Defendant denies the remaining allegations set forth in bullet point (10) because they do not accurately restate the medical records.

- Defendant admits that his medical records on October 5, 2021 from Dr. Collins state the following: "New problems: Pain in neck on left side, tightness in back provoked by prolonged sitting; Onset Date: October 5, 2021." Defendant denies the remaining allegations set forth in bullet point (11) because they do not accurately restate the medical records.

- Defendant admits that his medical records on January 5, 2022 from Dr. Collins state the following: "New problems: Stiffness and crepitus with turning the head, lower back stiffness and pain in the AM with sitting to standing; Onset Date: January 5,

2022." Defendant denies the remaining allegations set forth in bullet point (12) because they do not accurately restate the medical records.

- Defendant admits that his medical records on January 16, 2023 from Dr. Collins state the following: "New problems: Stiffness in neck, especially when turning to the left, Symptoms improved by: rest Symptoms worsened by: turning head to left. Pain quality: stiffness, sharp Radiation of pain: right shoulder Patient's pain severity/frequency: 1/10 less than 10% of the time; Onset Date: January 16, 2023." Defendant denies the remaining allegations set forth in bullet point (13) because they do not accurately restate the medical records.

Defendant denies each and every remaining allegation in this paragraph.

24.     Responding to the allegations of paragraph 24, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions to which no response is required. Defendant affirmatively states that the services provided by Dr. Collins aimed to rehabilitate his health condition related to a "tune-up" and preventative medicine aimed at stretching and muscle strength, and not a medical treatment for diagnosed medical conditions on his neck, back, and spine, for which he received medical treatment. The fact that the medical visits with Dr. Collins were sporadic over the years, sometimes only once per year, is consistent with Defendant's interpretation of these visits as not related to any specific medical conditions or diagnoses. For example, Defendant's November 27, 2019 chiropractor visit was prompted by strains of his muscles while rock climbing. Defendant disclosed to Plaintiff his chiropractor medical visits. Defendant denies each and every remaining allegation of this paragraph.

25.     Responding to the allegations of paragraph 25, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions and/or characterize documents that speak for themselves. Defendant denies each and every remaining allegation of this paragraph.

26.     Responding to the allegations of paragraph 26, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions and/or characterize documents that speak for themselves. Defendant denies each and every remaining allegation of

this paragraph.

### Rescission of the Policy

27.     Responding to the allegations of paragraph 27, Defendant admits that Plaintiff sent him a letter dated October 2, 2024, notifying him of its intent to rescind the disability policy that included a check for past premiums paid.  Defendant denies the remaining allegations set forth in paragraph 27 as they consist of subjective description of a document, while the document speaks for itself.  Defendant denies each and every remaining allegation of this paragraph.

28.     Responding to the allegations of paragraph 28, Defendant admits that he returned to Plaintiff the premium refund check and did not cash or deposit the check, and that he included a letter requesting that Plaintiff reconsider its attempt to rescind the Policy with documents in support of Defendant's eligibility for Policy benefits.  Defendant denies the remaining allegations because they consist of subjective description of a document, while the document speaks for itself.  Defendant denies each and every remaining allegation of this paragraph.

29.     Responding to the allegations of paragraph 29, Defendant admits that he did not deposit the premium refund check.  Defendant denies the remaining allegations because they consist of subjective description of a document, while the document speaks for itself. Defendant denies each and every remaining allegation of this paragraph.

### COUNT I

### DECLARATORY JUDGMENT AGAINST DEFENDANT

### RESCISSION

30.     Defendant repeats each of his responses to paragraph 1 through 29 of the Complaint.

31.     Responding to the allegations of paragraph 31, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions and/or recite a statute, except that Defendant specifically states that the relevant provision from the Arkansas Code is not stated in its entirety and the document speaks for itself.  Defendant admits that Arkansas Admin. Code 054.00.52-9, provides the following:

> B. An insurer may rescind a minimum basic benefit policy within the first three years after the policy inception only upon receipt of information concerning the insured's state of health, and a finding thereon that the insured failed to disclose or misrepresented material information contained on the application. Material information is that information concerning the insured's physical condition or past treatment which would, if disclosed, resulted in refusal to accept that insured or others treated for the same condition or in substantially the same condition as the insured. The burden of proof in cases in controversy before the Department shall be on the insurer.

> Ark. Admin. Code 054.00.52-9

Defendant denies each and every remaining allegation of this paragraph.

32.     Responding to the allegations of paragraph 32, Defendant neither admits nor denies the allegations to the extent that they call for legal conclusions.

33.     Responding to the allegations of paragraph 33, Defendant admits that the Policy was issued on February 9, 2023.  Defendant denies each and every remaining allegation of this paragraph.

34.     Responding to the allegations of paragraph 34, Defendant denies each and every allegation of this paragraph.

35.     Responding to the allegations of paragraph 35, Defendant denies each and every allegation of this paragraph.

36.     Responding to the allegations of paragraph 36, Defendant denies each and every allegation of this paragraph.

37.     Responding to the allegations of paragraph 37, Defendant denies each and every

allegation of this paragraph.

38.    Responding to the allegations of paragraph 38, Defendant admits that he received from Plaintiff a check for returned insurance premiums, which had not been cashed or deposited. Defendant denies each and every remaining allegation of this paragraph.

## COUNT II

## FRAUD

39.    Responding to the allegations of paragraph 39, Defendant repeats each of his responses to paragraphs 1 through 38 of the Complaint.

40.    Responding to the allegations of paragraph 40, Defendant denies each and every allegation of this paragraph.

41.    Responding to the allegations of paragraph 41, Defendant denies each and every allegation of this paragraph.

42.    Responding to the allegations of paragraph 42, Defendant denies each and every allegation of this paragraph.

43.    Responding to the allegations of paragraph 43, Defendant denies each and every allegation of this paragraph.

44.    Responding to the allegations of paragraph 44, Defendant admits that on January 16, 2023, he had a medical visit with Dr. Collins related to his general health maintenance, and that Defendant previously disclosed his chiropractor visits to Plaintiff before the issuance of the Policy. Defendant denies each and every remaining allegation of this paragraph.

45.    Responding to the allegations of paragraph 45, Defendant admits that he had medical visits with Dr. Collins related to his general health maintenance, and that Defendant previously disclosed his chiropractor visits to Plaintiff before the issuance of the Policy. Defendant denies each and every remaining allegation of this paragraph.

46.     Responding to the allegations of paragraph 46, Defendant denies each and every allegation of this paragraph..

47.     Responding to the allegations of paragraph 47, Defendant denies each and every allegation of this paragraph..

48.     Responding to the allegations of paragraph 48, Defendant denies each and every allegation of this paragraph..

49.     Responding to the allegations of paragraph 49, Defendant admits that the Policy includes a provision related to fraud.

50.     Responding to the allegations of paragraph 50, Defendant denies each and every allegation of this paragraph.

## AFFIRMATIVE DEFENSES

In addition to the foregoing, Defendant asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim for Relief)

As a first, separate affirmative defense to all claims for relief alleged in the Complaint, Defendant alleges that the Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

(Breach of Contract)

As a second and separate affirmative defense, Defendant alleges that Plaintiff substantially and materially breached the terms of the Policy, including, without limit, its contractual duty to pay Defendant disability benefits under the Policy, and the covenant of good faith and fair dealing that is implied in the contract.

## THIRD AFFIRMATIVE DEFENSE

(Failure to Mitigate Damages)

As a third and separate affirmative defense, Defendant alleges that he is informed and believes and on that basis alleges that Plaintiff failed to mitigate its alleged damages and, as a result, any recovery herein must be reduced to the extent that such damages, if any, were not mitigated.

## FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

As a fourth and separate affirmative defense, Defendant is informed and believes and on that basis alleges that Plaintiff, by its own conduct, is estopped from pursuing the recovery sought in the Complaint, and each and every purported claim for relief set forth therein, or any recovery at all, because Plaintiff had actual and/or imputed knowledge of the alleged misrepresentations of Defendant's chiropractor visits when Defendant disclosed this information to Plaintiff's representative during the underwriting process of the Policy. Plaintiff failed to investigate or request any relevant medical records from Defendant or any of his medical providers before the issuance of the Policy.

Pursuant to the Arkansas Regulation for Underwriting Practices for Individual Accident, Health, Cash Income, and Life Insurance Policies, Admin. Code 054.00.4-1, Plaintiff is estopped from using Defendant's chiropractor's medical records for the purpose of claiming rescission:

> If an application contains conflicting answers, or if an answer is clearly incomplete, the insurer has an obligation to investigate further. **For example, if a question about medical history is answered with the name of a doctor, but there is no statement concerning the condition treated or the reason for the visit, the insurer has an obligation to investigate further. An insurer failing to make such an investigation would be estopped from using the material it would have found by such inquiry, either for the purposes of rescission or for the purposes of rejecting the claim on the basis of pre-existing condition**.

Ark. Admin. Code 054.00.4-1 (Emphasis added).

Moreover, Plaintiff is estopped from claiming the right to rescission of the Policy based on any medical information in chiropractor Dr. Collins' medical records because

14

even if it had investigated and obtained the chiropractor's medical records, these records were consistent with the information that Plaintiff had already obtained verbally from Defendant before it issued the Policy. The disabling medical condition (essential tremor) that qualifies Defendant for disability benefits is unrelated to any chiropractic treatment or procedures that Defendant received for muscle strengthening or injury prevention.

## FIFTH AFFIRMATIVE DEFENSE

(Waiver)

As a fifth and separate affirmative defense, Defendant is informed and believes and, on that basis, alleges that the Complaint, and each and every purported claim for relief set forth therein, is barred by the doctrine of waiver.

Plaintiff knew that it had an obligation to investigate Defendant's prior health history and gather all relevant documents from his doctors during the underwriting process. Plaintiff knowingly waived its right to claim the remedy of rescission remedy based on any allegations of material misrepresentations or fraud made by Defendant when Plaintiff issued the Policy without a copy of Defendant's chiropractor's medical records. Defendant did not seek chiropractor services for a diagnosed medical condition and was not informed by his chiropractor that he had been diagnosed as having any medical condition of his back or neck because his visits were related only to preventative health and assistance with stretching and straightening exercises. Defendant disclosed his complete medical history to Plaintiff to the best of his knowledge and belief.

Additionally, Plaintiff waived its right to seek a rescission of the Policy contract based on Defendant's alleged misrepresentations or fraud because Defendant fulfilled his obligation of disclosure of his prior medical history; Plaintiff's inaction in not investigating the medical records constitutes a valid waiver of its right to rescind the Policy based on claims of fraud or

material misrepresentations.  Moreover, under Arkansas Regulation for Underwriting Practices for Individual Accident, Health, Cash Income, and Life Insurance Policies, Admin. Code 054.00.4-1, Plaintiff waived its right to seek rescission.

## SIXTH AFFIRMATIVE DEFENSE

### (Laches)

As a sixth and separate affirmative defense, Defendant is informed and believes and on that basis alleges that the Complaint, and each and every purported claim for relief set forth therein, is barred by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

As a seventh and separate affirmative defense, Defendant states that Plaintiff breached the covenant of good faith and fair dealing implied in the Policy.  Plaintiff's dishonest actions of seeking to rescind the Policy based on fraudulent or material misrepresentations when it affirmed in its Complaint that it had actual knowledge of the existence of chiropractic medical records, constitutes a breach of the implied covenant of good faith and fair dealing.

## EIGHTH AFFIRMATIVE DEFENSE

### (Policy Provisions and Exclusions)

As an eighth and separate affirmative defense, Defendant incorporates the provisions, terms, conditions, limitations, and exclusions of the Policy, which provide that Plaintiff has no right to recovery from Defendant for the allegations, claims, damages, defense costs and other matters asserted in the Complaint.

## NINTH AFFIRMATIVE DEFENSE

### (Reasonable and Lawful Conduct)

As a ninth and separate affirmative defense, Defendant alleges that all acts done by him

were performed fairly, in good faith, and for a lawful purpose.  The conduct of Defendant was in compliance with the terms and conditions of the Policy and in compliance with applicable laws, rules, and regulations.

### TENTH AFFIRMATIVE DEFENSE

(Unclean hands)

As a tenth and separate affirmative defense, Defendant alleges that Plaintiff is barred from recovery based on the doctrine of "unclean hands."  Plaintiff did not come to court with clean hands and engaged in inequitable or unconscionable conduct related to the subject matter of the litigation by attempting to claim rescission based on alleged  fraudulent or material misrepresentations of chiropractic medical treatment made by Defendant, even though Plaintiff had actual knowledge of Defendant's chiropractic visits and the existence of related medical records before issuance of the Policy contract and Plaintiff failed to investigate further or request the medical records.

### ELEVENTH AFFIRMATIVE DEFENSE

(Fault of Others)

As an eleventh and separate affirmative defense, Defendant is informed and believes, and thereupon alleges, that other persons or entities, whether or not parties to this Action, each were reckless, negligent, at fault, or strictly liable with respect to the matters alleged in the Complaint, and that this reckless, negligence, fault and/or strict liability proximately caused and/or contributed to the occurrence of the relief sought and/or any injury, loss and/or damage complained of, if any; therefore, should any damages or relief be awarded, they must be paid by or apportioned among all negligent, at-fault and/or strictly liable persons or entities, with all damages attributable to other persons or entities being offset against any damages awarded against Defendant, and with Defendant receiving a judgment against such other persons or entities for indemnity.

## TWELFTH AFFIRMATIVE DEFENSE

(No Right to Fees)

As a twelfth and separate affirmative defense, Defendant alleges that Plaintiff is not entitled to attorneys' fees.  Plaintiff had a duty under the terms of the pertinent Policy to investigate allegedly incomplete medical information in the present case, but it failed to do so.  Plaintiff is not entitled to attorneys' fees in this Action because it does not have the right to rescind the Policy, and in attempting to do so, it breached the parties' contract and the covenant of good faith and fair dealing.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Statute of Limitations)

As a thirteenth and separate affirmative defense, Defendant alleges that each and every purported claim set forth by Plaintiff therein, is barred by the applicable statute of limitations.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Recovery Barred by Public Policy)

As a fourteenth and separate affirmative defense, Defendant is informed and believes and on that basis alleges that the recovery sought by Plaintiff in its Complaint is barred by public policy.

## FIFTEENTH AFFIRMATIVE DEFENSE

(Punitive Damages)

As a fifteenth and separate affirmative defense, Defendant is entitled to punitive damages due to Plaintiff's bad faith conduct of unreasonable denial and delay of Defendant's claim, failure to timely and properly investigate Defendant's disability claim, dishonest and malicious actions attempting to rescind the Policy without a good faith basis, and failure to act in good faith and fair

dealing.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Right to Raise Additional Defenses)

As a sixteenth and separate affirmative defense, Defendant reserves the right to raise additional defenses and to supplement those asserted herein after discovery and additional facts and information have become available.

**WHEREFORE**, Defendant prays as follows:

1.     That Plaintiff take nothing by the Complaint and that Defendant be awarded judgment in his favor;

2.     For an award of attorneys' fees to the extent permitted by law or contract;

3.     For an award of attorneys' fees pursuant to A.C.A § 16-22-308;

4.     For costs of suit incurred herein; and

5.     For such other and further relief as the Court may deem just and proper.

## COUNTERCLAIMS

## STATEMENT OF FACTS

In addition to the foregoing, and by way of Counterclaims against Plaintiff, Defendant James Hudson asserts the following:

1.     In or about January 2023, Defendant completed an application for disability income insurance with the help of his agent, Brandon Capps.

2.     Plaintiff scheduled a phone interview with Defendant, during which Defendant truthfully and to the best of his knowledge and belief answered all questions about his medical history, medical visits, and treatments from different medical providers, including his

chiropractor Dr. Collins.  Plaintiff did not request any medical records from either Dr. Collins or any other medical providers.

3.      On February 9, 2023, Plaintiff issued to Defendant a Disability Income Insurance Policy, No. 63802179, which is the subject of this litigation.

4.      Defendant specifically disclosed to Plaintiff during the underwriting process his infrequent visits with the chiropractor Dr. Collins over the years, once or twice per year, for the maintenance of his overall health, general "tune-up," and treatment of stiff muscles, climbing injuries, and injury prevention.

5.      Defendant visited Dr. Collins for the first time on August 31, 2018, when he was only 29 years old.  On an intake form for health history, Defendant listed "moderate obstructive sleep apnea" as the only health problem he was treating at that time, plus a goal to achieve weight loss because he considered himself to be overweight at 248 pounds.

6.      Defendant also completed a "pain drawing" as part of his intake forms and circled "0" on the pain scale of 0 to 10 to indicate his pain level in any body parts at the time of the visit.  Thus, Defendant did not seek chiropractor treatments for any neck and back pain in 2018 (as Plaintiff incorrectly alleged in its Complaint for rescission) and  the chiropractic visit was solely for improving Defendant's overall health and losing weight.

7.      To the best of his knowledge and belief, Defendant answered truthfully all questions asked by Plaintiff during the underwriting process.  Defendant considered his visits with Dr. Collins to be preventative treatments or for addressing muscle stiffness and the need for strengthening or stretching exercises.  Defendant was not advised by Dr. Collins during any of his visits that Dr. Collins diagnosed him with any medical conditions and Defendant never reported to him that he was diagnosed with any medical conditions.  Moreover, Defendant was not referred by Dr. Collins to any other medical professionals for treatment of any diagnosed

medical conditions.

8.      Thus, Defendant honestly and to the best of his knowledge and belief answered fully all questions on Plaintiff's application related to any prior treatments of any medical conditions or diagnoses.

9.      At all times relevant, Plaintiff was aware and had actual knowledge of Defendant's chiropractic visits and decided not to request any related medical records before it issued the Policy.  Thus, Plaintiff was satisfied with Defendant's disclosure of his medical history, and it issued the Policy without further requests for documents from any medical providers or specifically Dr. Collins.

10.     Ark. Admin. Code 054.00.4-1 provides guidance for underwriting practices for individual disability policies.  Section A.6 of the regulation provides that: "If an application contains conflicting answers, or if an answer is clearly incomplete, the insurer has an obligation to investigate further. For example, if a question about medical history is answered with the name of a doctor, but there is no statement concerning the condition treated or the reason for the visit, the insurer has an obligation to investigate further. An insurer failing to make such an investigation would be estopped from using the material that it would have found by such inquiry, either for the purposes of rescission or for the purposes of rejecting the claim on the basis of pre-existing condition."

11.     Based on the lack of any requests by Plaintiff for medical records from Dr. Collins and the lack of any further investigation of Defendant's medical history, Plaintiff is estopped from seeking, and has waived it ability to seek, a rescission of the Policy on the basis of fraudulent or material misrepresentations in the application process.

12.     Plaintiff decided not to investigate any statements made by Defendant that were related to the chiropractic visits before issuing the Policy, and it is thus estopped from using

the material that it would have found by such inquiry for the purposes of either rescission or rejection of Defendant's disability claim.

13.     Plaintiff has provided no evidential support in its Complaint by either its own internal guidelines or insurance industry standards for its allegations that if Plaintiff had received and reviewed the records from Dr. Collins before issuing the Policy, it would not have issued the Policy.

14.     Defendant's medical condition that gave rise to his disability claim is the diagnosis of essential tremor and has no relation to any other medical conditions related to Defendant's back or neck.

15.     Defendant's eligibility for disability benefits under Plaintiff's Policy is based on a completely different medical condition unrelated to any minor muscle stiffness treated by Dr. Collins.

16.     Defendant did not seek chiropractic services for any known diagnoses or medical conditions before the issuance of the Policy.

17.     In his application for disability, Defendant provided a letter from Dr. Collins, dated December 9, 2024, in which the doctor confirmed that the purpose and goals of Defendant's office visits with him were exclusively focused on musculoskeletal function and health, injury prevention, and mobility.  Dr. Collins stated that treatment included chiropractic manipulative therapies, myofascial release, and rehabilitative exercise aimed at speeding recovery and reducing the risk of future injuries.

18.     However, acting in bad faith, Plaintiff attempted to rescind the Policy claiming fraudulent or material misrepresentations by Defendant to avoid its obligation to pay disability benefits under the Policy.

19.     Defendant comes to this court with "clean hands," having disclosed to the best

22

of his knowledge and belief his entire medical history to Plaintiff during the application process for disability insurance.

20.     Plaintiff admitted in its Complaint, in paragraph 17, that it had actual knowledge of chiropractic visits after Defendant notified Plaintiff during his phone interview that his chiropractic visits' main purpose was for rehabilitation, nutrition, and injury prevention, and not related to medical treatment of any diagnosed medical condition.

21.     Defendant did not make any material misrepresentations during the application process, and Plaintiff therefore does not have the right to seek a rescission remedy.

22.     Defendant did not make any fraudulent misrepresentations during the application process, and Plaintiff has not pleaded sufficient facts in its Complaint to establish and prove that Defendant engaged in fraudulent conduct.

23.     Defendants Does 1 through 10, inclusive, are sued by fictitious names because their true name and capacities, whether individual, corporate, associate or otherwise, and/or their responsibility and culpability for the acts alleged herein are unknown to Defendant James Hudson at this time.  Defendant James Hudson is informed and believes, and on that basis alleges, that each Defendant sued herein as "Doe" is responsible in some manner for the acts and events referred to herein.  When their true names, capacities, responsibility, and culpability claim are ascertained, Counterclaimant James Hudson will seek leave of this Court to amend the complaint as appropriate.

## FIRST COUNTERCLAIM

(For Breach of Contract)

(Defendant/Counterclaimant James Hudson Against Plaintiff/Counterdefendant and Does 1 to 10)

24.     Defendant hereby incorporates by reference each and every allegation set forth in each of the foregoing paragraphs, as though fully set forth herein.

25.     Defendant and Plaintiff entered into a valid and binding written contract, i.e., the disability Policy, by virtue of Plaintiff issuing the Policy to Defendant after an application process.  The Policy obligated Plaintiff to, among other things, pay Defendant a monthly disability insurance benefit should he become disabled within the meaning of the Policy.

26.     At all relevant times, Defendant has been, and continues to be, totally disabled within the meaning of the Policy, due to a neurological condition of essential tremor, and such disability is unrelated to any transient aches or pains in the neck, or back, for which Plaintiff alleges in its Complaint Defendant received treatments by his chiropractor.

27.     Plaintiff improperly brought this action for rescission and should be estopped from claiming fraudulent or material representations because Defendant disclosed his entire medical history to Plaintiff before the Policy was issued, including the chiropractic visits.

28.     Defendant fulfilled every condition and had duly performed each and every obligation that he was required to perform under the terms of the Policy, except those that were excused or waived, and he is thus entitled to payment of long-term disability ("LTD") benefits under the terms and conditions of the Policy and full performance by Plaintiff.

29.     Plaintiff breached its obligations to Defendant under the Policy by failing to fulfill its obligation to pay his disability benefits and seeking rescission of the Policy based on alleged material misrepresentations and fraud.

30.     Because Defendant disclosed his entire medical history, including his chiropractic visits, Plaintiff is estopped from seeking rescission of the Policy, and its lawsuit for rescission was thus brought in bad faith and in violation of the provisions of the Policy's contract.

31.     As a direct and proximate result of Plaintiff's conduct as alleged herein,

24

Defendant has suffered and will continue to suffer monetary and non-monetary damages, in an amount to be determined at trial, but which exceed the jurisdictional minimum of this Court of $75,000, including but not limited to loss of his disability insurance benefits, pre-judgment interest on those benefits at the legal rate, and attorneys' fees and costs.

32.     Plaintiff shall pay Defendant and his attorneys all of the attorneys' fees and costs incurred to defend Plaintiff's action for rescission, pursuant to A.C.A. § 23-79-209, which allows the recovery of these fees in all suits in which the insured prevails against the insurer seeking a declaratory judgment under the Policy with the effect of depriving the holder of the policy of his rights thereunder.

33.     Defendant James Hudson alleges all of the same conduct against Defendants Does 1 through 10 as it does against Plaintiff in this Counterclaim for Relief.

## SECOND COUNTERCLAIM

(For Breach of the Implied Covenant of Good Faith and Fair Dealing)

(Defendant/Counterclaimant James Hudson Against Plaintiff/Counterdefendant and Does 1 to 10)

34.     Defendant hereby incorporates by reference the preceding paragraphs as though the same were set forth fully at length herein.

35.     Each and every insurance contract, including the Policy in this case, contains an implied covenant of good faith and fair dealing.  That covenant required Plaintiff to, among other things: refrain from acting in any way that could injure the rights of Defendant to receive the benefits of the Policy, including his disability benefits; properly and thoroughly investigate the claim before denying benefits; and not withhold or delay paying Policy benefits without having a reasonable basis.

36.     Plaintiff breached the implied covenant of good faith and fair dealing by dishonestly alleging that fraudulent or material representations were made during the

application process for the Policy by Defendant, which entitles Plaintiff to bring a suit for rescission, despite Plaintiff being fully aware of Defendant's entire medical history and, specifically, the wellness visits with chiropractor Dr. Collins.

37.     Moreover, Defendant's disabling medical condition of essential tremor is not related to either any pre-existing medical conditions that he had before the issuance of the Policy or any other of Defendant's medical conditions that were diagnosed by his medical providers before the effective date of the Policy.

38.     Plaintiff has no reasonable basis on which to claim, and it has not met its burden under Claim Ark. Admin. Code 054.00.52-9 to show that it is entitled to the remedy of rescission of the Policy, because Defendant did not make material misrepresentations or fraudulent statements before the Policy was issued.

39.     Plaintiff breached the implied covenant of good faith and fair dealing by the following conduct:

(a)     Unreasonable, dishonest and bad faith failure to approve and pay Defendant all the benefits that he was due under the Policy, and its attempt to rescind the Policy without having a reasonable basis because it had actual knowledge of Defendant's chiropractor visits and the existence of medical records from Dr. Collins.

(b)     Unreasonable, dishonest, and bad faith failure to properly and thoroughly investigate Defendant's prior medical history to ensure that it drafted the appropriate disability policy with exclusions of some medical conditions.

(c)     Unreasonable, dishonest, and bad faith failure to pay the Policy's benefits, and pursuit of a rescission remedy based on alleged (but nonexistent) fraud, to which remedy Plaintiff is not entitled, as a matter of both fact and law.

(d)    By misinterpreting Arkansas law and alleging that it could rescind the Policy if it would not have issued the Policy "as it was issued" instead of alleging that it would not have issued the Policy at all had it known of Plaintiff's alleged misrepresentations. Because Plaintiff would have issued the Policy even if it had known of the alleged misrepresentations, the Arkansas law upon which it relied did not apply. This is per se bad faith under the law.

40.    Even if Plaintiff obtained and reviewed the chiropractic medical records before the issuance of the Policy, it would have still issued the Policy, and claiming that it would not have issued the Policy to avoid its obligation to pay benefits under the Policy is willful and/or intentional and/or arbitrary and capricious so that Defendant is entitled to an award of penalties, attorneys' fees, compensatory damages, punitive damages and costs.

41.    By reason of the foregoing, Defendant is entitled to a judgment against Plaintiff that provides that Plaintiff has no right to rescind the Policy and that Plaintiff shall immediately decide on Defendant's application for disability benefits and pay Defendant his attorneys' fees and costs that he had to incur to defend the improper rescission action.

42.    Plaintiff acted in bad faith by engaging in the dishonest conduct of claiming that Defendant made fraudulent or material misrepresentations about his chiropractic visits, when in fact Defendant fully disclosed his medical history and all his providers before the issuance of the disability Policy.

43.    As a proximate result of Plaintiff's conduct, including its dishonest, bad faith, unreasonable and improper claims handling and its decision to deny Defendant's application for disability benefits without having a reasonable basis and file an action for rescission, Defendant had to retain lawyers to represent him (the McKennon Law Group PC).

44.    Defendant has incurred attorneys' fees and costs, and will continue to do so, to

pursue this litigation and otherwise pursue the disability benefits that he is entitled to receive from Plaintiff under the Policy, but which benefits it has incorrectly refused to pay without having a reasonable basis.

44.     Plaintiff's conduct, as alleged above, was undertaken with a dishonest and malicious intent of depriving Defendant of his legal right to disability insurance proceeds that are due to him under the Policy and otherwise causing his injury.

45.     Plaintiff's acts were malicious, dishonest, wanton, and done with a conscious indifference to the consequences, which justifies an award of bad faith and punitive damages in an amount to be proven at trial.  An award of punitive damages is justified where the evidence indicates that the defendant acted wantonly in causing the injury or with such conscious indifference to the consequences that malice may be inferred.  *D'Arbonne Const. Co., Inc. v. Foster*, 354 Ark. 304, 308, 123 S.W.3d 894, 898 (2003) (citing *Stein v. Lukas*, 308 Ark. 74, 823 S.W.2d 832 (1992); *Mo. Pac. R.R. v. Mackey*, 297 Ark. 137, 760 S.W.2d 59 (1988); *Nat'l By-Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731 S.W.2d 194 (1987)).

46.     As a direct and proximate result of Plaintiff's conduct as alleged herein, including its breaches of the implied covenant of good faith and fair dealing, Defendant has suffered and will continue to suffer emotional distress, and mental anguish due to the lack of disability benefits (which are needed to support his family), and monetary damages in an amount to be determined at trial, but which exceed the jurisdictional minimum of this Court of $75,000, including but not limited to, loss of his disability insurance benefits under the Policy, both those that are past due and those that will become due in the future; pre-judgment interest on the past- due benefits at the legal rate; emotional distress damages; and attorneys' fees, costs and expenses incurred in connection with this action.

## THIRD COUNTERCLAIM

(Violation of the Claim Ark. Unfair Claims Settlement Practices Act)

(Defendant/Counterclaimant James Hudson Against Plaintiff/Counterdefendant and Does 1 to 10)

47.     Defendant hereby incorporates by reference the preceding paragraphs as though the same were set forth fully at length herein.

48.     Under A.C.A. Section 23-66-206(12), an insurer engages in unfair claims settlement practices if the insurer misrepresents pertinent facts or insurance policy provisions relating to coverage at issue and if it refuses to pay claims without conducting a reasonable investigation based upon all available information.

49.     Plaintiff engaged in unfair claims settlement practices by failing to pay the disability benefits that Defendant was entitled to after filing his application with proof of loss.

50.     Plaintiff is attempting in bad faith to rescind the Policy by claiming that Defendant allegedly made fraudulent or material misrepresentations of chiropractic visits, even though Plaintiff itself admitted it had been notified by Defendant of these chiropractic visits before the issuance of the Policy.

51.     Plaintiff failed to conduct a reasonable investigation of Defendant's medical history before the issuance of the Policy; it has thus waived its right to seek rescission.

52.     Plaintiff is currently refusing to pay Defendant his disability benefits under the Policy after Defendant made a demand for these benefits.

53.     Defendant is entitled to damages under A.C.A. Section 23-79-208(a)(1), which provides that when an insurer fails to pay for a loss within the time specified in a policy after demand is made, the insurer: "shall be liable to pay the holder of the policy or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the

29

loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." An insurer will be liable under the statute even if the insurer denied coverage in good faith. *See, e.g.*, *Home Mut. Fire Ins. Co. v. Jones*, 63 Ark. App. 221, 977 S.W.2d 12 (1998)

54.     Plaintiff violated A.C.A. Section 23-79-208(a)(1) when it improperly and unreasonably refused to pay the disability benefits that Defendant was entitled to when he submitted his claim. Plaintiff denied coverage despite Defendant's overwhelming medical evidence showing entitlement to such benefits. Defendant believes that his young age and the long duration of his permanent disability payout of benefits would result in the payment of significant amount of benefits, which incentivizes Plaintiff to search for any possible ways to rescind the Policy instead of paying the disability benefits.

55.     Plaintiff's wrongful refusal and bad faith dishonest attempts to rescind the Policy to avoid its obligations under the Policy to pay LTD benefits caused Defendant to suffer direct harm by precluding him from receiving the disability benefits under the Policy that he needs to pay his monthly living expenses.

56.     Plaintiff caused Defendant to suffer damages by denying his monthly $3,300 in disability benefits since the date of his disability onset in March of 2024 and forced Defendant to incur attorneys' fees and costs to defend this action for rescission and to assert his claims for benefits under the Policy.

**WHEREFORE**, Defendant/Counterclaimant prays as follows:

1.     That Plaintiff is not allowed to rescind the disability Policy, and that Defendant be awarded judgment in its favor;

2.     Compensatory damages in an amount exceeding $75,000;

3.     For an award of attorneys' fees to the extent permitted by law or contract;

4.     For punitive damages;

5.     For damages pursuant to A.C.A. § 23-79-208(a)(1), or 12% damages upon the

amount of the loss, together with all reasonable attorney's fees for the prosecution and

collection of the loss;

6.      For damages pursuant to A.C.A. Section 23-79-209 for defending this

declaratory relief action initiated by Plaintiff;

7.      For an award of attorneys' fees pursuant to A.C.A § 16-22-308;

8.      For costs of suit incurred herein; and

9.      For such other and further relief as the Court may deem just and proper.


                                        Respectfully Submitted,


                                        /s/Marcus Vaden
                                        Marcus Vaden
                                        Arkansas Bar No. 89126
                                        P.O. Box 203
                                        Conway, AR 72033
                                        (501) 329-8723
                                        mvaden@marcusvaden.com

                                        ATTORNEY FOR,
                                        Defendant/Counterclaimant James
                                        Hudson


## CERTIFICATE OF SERVICE

        I, Marcus Vaden, do hereby certify that a true and correct copy of the foregoing document
was served electronically to those parties who have entered an appearance in the Court's Electronic
Case Filing (ECF) System, to the parties required to be noticed pursuant to the Arkansas Code and
Arkansas Rules of Civil Procedure on the date entered on the Court's Docket.


                                        /s/ Marcus Vaden