IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY                                                              PLAINTIFF

V.                                      CASE NO. 5:25-CV-5023

JAMES HUDSON                                                                   DEFENDANT

## OPINION AND ORDER

Now before the Court is Plaintiff Massachusetts Mutual Life Insurance Company's ("MassMutual") partial Motion to Dismiss (Doc. 39) Defendant James Hudson's counterclaims under Federal Rule of Civil Procedure 12(b)(6). MassMutual asserts that Mr. Hudson has failed to state plausible claims for bad faith and statutory damages under Arkansas law. Mr. Hudson filed a Response in Opposition (Doc. 42), and the time for seeking leave to file a reply has passed. For the reasons that follow, MassMutual's Motion (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**.

This case arises out of Mr. Hudson's long-term disability insurance policy with MassMutual (the "Policy"). MassMutual issued the Policy on February 9, 2023, and on April 4, 2024, Mr. Hudson submitted a claim for benefits under the Policy claiming total disability due to an essential tremor. (Doc. 2, ¶¶ 21, 33). On October 2, 2024, MassMutual notified Mr. Hudson that it was rescinding the Policy because Mr. Hudson had made material or fraudulent misrepresentations in his application. *Id.* ¶ 27. MassMutual attempted to refund Mr. Hudson's premium payments and refused to pay the $3,300 per month in disability benefits owed under the Policy. *Id.* ¶¶ 27–38, 10; Doc. 38, ¶ 55.

MassMutual alleges that Mr. Hudson made material or fraudulent misrepresentations in his application by denying that he had been diagnosed with or

treated for "[a] disorder or impairment of the muscles, bones, joints, nerves, spine, neck or back." (Doc. 2, ¶ 13). This was a misrepresentation, MassMutual says, because Mr. Hudson had been receiving treatment for back pain from chiropractor Jason Collins since 2018. *Id.* ¶ 23.

Mr. Hudson says he made no misrepresentation—he told MassMutual about his chiropractic visits during his Client Medical Interview. (Doc. 38, ¶¶ 12, 17). MassMutual acknowledges as much: "In the underwriting process, MassMutual received information regarding Hudson's possible chiropractic treatment for back pain and cervical radiculopathy in 2018. . . . Hudson responded that he did not recall having chiropractic treatment in 2018 for back pain and cervical radiculopathy, and further represented that he had never been treated for back pain." (Doc. 2, ¶ 17). Mr. Hudson says that the purpose of his visits was "minimizing the risks of any injuries that might develop during his job as a dentist." (Doc. 38, ¶ 17). He asserts that, consistent with his understanding of these visits as preventative, he "was not advised by Dr. Collins during any of his visits that Dr. Collins diagnosed him with any medical conditions," nor did Mr. Hudson ever report to Dr. Collins "that he was diagnosed with any medical conditions." (Doc. 38, ¶ 7).

On February 15, 2023, MassMutual issued an "Amendment to Pending Application" which stated, "I have never been diagnosed or treated for any back symptoms." (Doc. 2-1, p. 58). Mr. Hudson refuses to admit or deny that he signed the Amendment because MassMutual has refused to provide him a signed copy to review and the Amendment that appears in the record is unsigned. *Id.*; Doc. 38, ¶ 18.

Mr. Hudson's chiropractic records, reviewed by MassMutual after Mr. Hudson's claim was filed in April 2024, reveal that he visited Dr. Collins thirteen times over a period

of about four and a half years. During that time, Mr. Hudson complained at various points of "symptoms of cervical spine lordosis," "neck and back pain," lower back pain," and "stiffness and clicking in his neck." (Doc. 2, ¶ 23). MassMutual represents that on April 19, 2021, Dr. Collins "diagnosed Hudson with low back pain," and "continued to diagnose Hudson with low back pain" thereafter. *Id.* Mr. Hudson denies this characterization of his medical records, instead quoting them directly. On each occasion dating back to July 2019, Dr. Collins's notes state "New problems" followed by a brief description, e.g., "LB pain/sore," "Tightness in neck and back." (Doc. 38, ¶ 23). It is not clear why MassMutual identifies April 19, 2021, as the appointment during which Dr. Collins diagnosed Mr. Hudson with low back pain; he had complained of the same at earlier appointments. (Doc. 2, ¶ 23).

In March 2024, Mr. Hudson was diagnosed with "essential tremor," a "neurological condition . . . unrelated to any transient aches or pains in the neck, or back" which he claims rendered him totally disabled within the meaning of the Policy. (Doc. 38, ¶ 26). On April 4, 2024, Mr. Hudson submitted a claim for benefits under the Policy. *Id.* ¶ 21. His claim prompted MassMutual to obtain Mr. Hudson's chiropractic records, summarized above, which, MassMutual says, "revealed misrepresentations in the Application and Amendment," namely that Mr. Hudson had been diagnosed with and/or treated for back pain by Dr. Collins. (Doc. 2, ¶ 23). MassMutual asserts that Mr. Hudson's "medical history rendered him ineligible for the Policy as it was issued," so six months later on October 2, 2024, MassMutual notified Mr. Hudson "that it was rescinding the Policy due to material and/or fraudulent misrepresentations in the Application." (Doc. 2, ¶ 27). MassMutual also attempted to refund Mr. Hudson's premium payments. *Id.* ¶ 27–29. MassMutual filed this

3

lawsuit against Mr. Hudson seeking a declaratory judgment that the Policy is void and rescinded. *Id.* ¶ 50.

Mr. Hudson alleges that MassMutual acted in bad faith because it had "actual knowledge of [his] medical history" and "failed to conduct a reasonable investigation during the underwriting process," so it had no reasonable basis on which to assert that it could rescind the Policy, deny Mr. Hudson's claim, or accuse him of material misrepresentation. (Doc. 38, ¶¶ 35, 41(a), 44).

He also asserts that after he filed his claim, MassMutual told him that it was allowed to "rescind the Policy if it would not have issued the current Policy 'as it was issued,' . . . had it known of [Mr. Hudson]'s alleged misrepresentations." (Doc. 38, ¶ 38). This, Mr. Hudson asserts, was an intentional misstatement of Arkansas law. *Id.* ¶ 41(d). Under Arkansas law, an insurer can rescind a policy within the first three years "only upon receipt of information concerning the insured's state of health, and a finding thereon that the insured failed to disclose or misrepresented material information contained on the application." Ark. Admin. Code 054.00.52-9(B). "Material information is that information concerning the insured's physical condition or past treatment which would [have], if disclosed, resulted in *refusal to accept that insured* or others treated for the same condition or in substantially the same condition as the insured." *Id.* (emphasis added). Mr. Hudson asserts that "[e]ven if Plaintiff obtained and reviewed the chiropractic medical records before the issuance of the Policy, it would have still issued the Policy," so MassMutual's assertion that it could rescind the Policy relied on its misstatement of Arkansas law. (Doc. 38, ¶ 42).

To date, MassMutual has not paid Mr. Hudson any of the benefits which he is purportedly entitled to under the Policy.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a claim if it is not supported by "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. A claim is subject to dismissal if the facts fail to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept all factual allegations as true and view them in the light most favorable to the plaintiff, but it need not accept as true any "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## III.  DISCUSSION

At issue here, Mr. Hudson has counterclaimed against MassMutual for bad faith in violation of Arkansas common law and for statutory damages under Arkansas Code § 23-79-208(a)(1). MassMutual asks the Court to dismiss both these claims under Rule 12(b)(6).

### A. Bad Faith

To state a claim for bad faith under Arkansas law, the plaintiff must allege facts that show the insurance company engaged in "affirmative misconduct" that was "dishonest, malicious, or oppressive" in nature "in an attempt to avoid its liability under an insurance policy." *Aetna Cas. & Sur. Co. v. Broadway Arms Corp.*, 281 Ark. 128, 133 (1983). "The

tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct." *State Auto Prop. & Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 56 (1999). Examples of affirmative misconduct constituting bad faith include lying to a claimant that there was no insurance coverage and altering insurance records to falsely claim that coverage had lapsed. *See S. Farm Bureau Cas. Ins. Co. v. Allen*, 326 Ark. 1023, 1028–29 (1996); *Emps. Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 32–33 (1984).

Here, Mr. Hudson has plausibly alleged a claim for bad faith. He asserts that MassMutual knew about his chiropractic care and is now lying by accusing him of making fraudulent or material misrepresentations to avoid liability under the Policy. Moreover, Mr. Hudson alleges that MassMutual's representative affirmatively misstated the legal standard for recission. Mr. Hudson says MassMutual told him it could rescind the Policy because it would not have issued the Policy *as it was issued* had it known about his condition. But that is not what the law requires. In its own complaint, MassMutual cites the relevant provision which permits recession based on conditions that, "if disclosed, [would have] resulted in *refusal to accept that insured* or others treated for the same condition or in substantially the same condition as the insured." (Doc. 2, ¶ 31). Mr. Hudson alleges that MassMutual would still have accepted him as an insured if it had viewed his full chiropractic records during the underwriting process. And the Court considers it entirely plausible that MassMutual insures people who see a chiropractor for back pain, perhaps with coverage exclusions. One could reasonably infer from the facts alleged that this misstatement of the law was intentional, dishonest, and made in an attempt to avoid liability under the Policy.

Insurers who lie about coverage to avoid liability may be liable for bad faith. Likewise, insurers who lie about their right to rescind a policy to avoid liability, as Mr. Hudson alleges, may be liable for bad faith. Plaintiff's Motion to Dismiss is **DENIED** as to Mr. Hudson's Amended Second Counterclaim.

### B. Statutory Penalty

MassMutual also asserts that Mr. Hudson cannot maintain his claim for statutory damages under Arkansas Code § 23-79-208 as a separate cause of action. Section 208(a)(1) provides that when an insurance company liable for a loss "fail[s] to pay the loss[ ] within the time specified in the policy after demand is made," the company "shall be liable to pay the holder of the policy . . . , in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." As this Court has previously held:

> The statutory penalty and attorneys' fees under Arkansas Code § 23-79-208 are remedies, not separate causes of action. *See Gafford v. Allstate Ins. Co.*, 2015 Ark. 110, at 6 (2015) (describing the attorneys' fees in § 23-79-208 as a "statutory remedy"). Much like punitive damages, it is unnecessary to allege the statutory remedies under § 23-79-208 as a separate cause of action.

*George's Inc. v. Lloyd's of London Syndicate 4000 Issuing Certificate No. CPP1877167*, 2020 WL 6829959, at *9 (W.D. Ark. Nov. 20, 2020).

Mr. Hudson asserts that this interpretation is "contrary to both case law and the plain statutory language." (Doc. 42, p. 20). Mr. Hudson cites no case law. And while the Court agrees that "[t]he statute unambiguously creates liability 'in addition to the amount of the loss' when an insurer fails to timely pay a covered claim," this additional liability is not a distinct cause of action separate and apart from the underlying breach of contract.

*Id.* It is, as the statute says, "in addition to the amount of the loss." Ark. Code Ann. § 23-79-208(a)(1).

Mr. Hudson may well be entitled to recover the 12% penalty and attorneys' fees authorized under § 23-79-208 in addition to damages for breach of contract should he prevail on that claim. But that does not make the statutory penalty a separate cause of action. 12% of nothing is nothing. Mr. Hudson's Amended Third Counterclaim is **DISMISSED WITHOUT PREJUDICE**.

## IV.  CONCLUSION

For these reasons, MassMutual's Motion to Dismiss (Doc. 39) is **GRANTED AND PART AND DENIED IN PART**. Mr. Hudson's Amended Third Counterclaim is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this 23rd day of January, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE